**Eloise ROBINSON, Plaintiff,**

v.

**Vincent M. RUSSO, Director, Defense Logistics Agency, Defendant.**

Civ. A. No. 88–501–R.

United States District Court,
E.D. Virginia,
Richmond Division.

June 14, 1990.

Sa'ad El–Amin, Richmond, Va., for plaintiff.

G. Wingate Grant, Asst. U.S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

SPENCER, District Judge.

This matter is before the Court on plaintiff's claims of discrimination based on age and race made pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e–2000e–17, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634. For the reasons stated in this memorandum, the court finds in favor of defendant and will enter judgment accordingly.

I

Towards the end of 1984, management at the Defense General Supply Center (the "DGSC"), where the Defense Logistics Agency is located, decided to seek applicants for five overstrength positions as Inventory Management Specialists at a GS–9 level. Since these were overstrength positions, there were no actual vacancies. Rather, the new employees would replace employees as they retired. Thus, the new employees could be trained in the position before the previous employees retired.

Plaintiff Eloise Robinson, who is black and was sixty-four years old at the time, filled out an SF–171 application form for one of these positions in March, 1985. After receiving applications, the Office of Personnel Management ("OPM") in Norfolk prepared a register of the applicants who met the minimum qualifications for the positions. Robinson's name appeared on that original register, along with four other applicants.

Harvey T. Bennett, an Inventory Management Supervisor at DGSC, conducted the selection of the candidates. Bennett is white and, at the time, was fifty-nine years old. Bennett received application forms for four of the five applicants on the original register, including Robinson's form. He received no other information on the candidates. Although no interviews were required, Bennett decided to interview all four applicants.

Bennett selected only candidate Michael Glover from these four applicants. During her interview, Robinson presented herself poorly. One of the primary requirements for the position was the ability to use the computerized system at DGSC for handling supplies, called the Standardized Automated Management System ("SAMMS"). Robinson had never used SAMMS, and her application form reflected this fact. When Bennett asked Robinson if she had had SAMMS experience, she did not respond to his question.

Robinson did have a great deal of experience with a separate computer system during her employment with the Marine Corps. However, this system, called the Marine Unified Material Management System ("MUMMS"), was unfamiliar to Bennett, and Bennett does not recall asking Robinson about MUMMS. When asked whether she wished to elaborate on any of the items on her application, she replied only that she had GS–11 status in her previous government position. Robinson did not elaborate on any similarities between SAMMS and MUMMS and did not inquire whether Bennett knew of the MUMMS system.

Moreover, Robinson lacked recent experience in inventory management, and Bennett noted that this detracted from her application. Robinson had worked in inventory management for approximately ten years. However, she had left her position with the Marine Corps in 1976 and had not worked in inventory management since.

In June, 1985, after Glover was hired, DGSC hired a second inventory management specialist, Frances Harrison. Harrison, who is white and was forty-six at the time of her selection, applied for the position through a reinstatement program for former employees at DGSC. Harrison had left DGSC in 1974 and had been a housewife in the intervening time. She was interviewed by Dianne Ward, an inventory management supervisor with a rank similar to Bennett's. Ward discussed Harrison's application with Bennett, and he signed the form selecting Harrison. Bennett never interviewed Harrison, though he was familiar with her work at DGSC and knew she had SAMMS experience.

In August, 1985, OPM prepared another register of nine names for the three remaining positions. However, Bennett received only three SF–171's. Also, he was unaware that Robinson remained on the register, though he signed Robinson's notice of non-selection in August, 1985. Bennett interviewed the three applicants for whom he had received SF–171's, Jennifer

Sanders, Lynn Osborne, and Jo Ann Jackson, and hired all three.

Sanders, who is white and was twenty-seven at the time, was currently working at DGSC as a GS-7 inventory management specialist. She had SAMMS experience and 21 hours of college courses. Osborne, who is also white and was thirty-eight, was working as an inventory management specialist at the Veterans Administration Hospital in Richmond. She had no SAMMS experience and no college education. However, at the interview, she told Bennett that she was studying SAMMS and was taking night classes at John Tyler Community College. Jackson, who is black and was fifty-three, was a GS-7 inventory management specialist at the Defense Construction Supply Center in Columbus, Ohio. Her application form showed experience with an automated inventory system, but it did not specify the name of the system. Bennett however, knew that system to be SAMMS.

The matter was tried on June 1, 1989, and the Court heard evidence from both plaintiff and defendant. The Court took the matter under advisement, and it is now ripe for decision.

## II

In a Title VII case alleging discriminatory treatment, the plaintiff has the initial burden of proving a *prima facie* case of discrimination by the preponderance of the evidence. If the plaintiff meets this burden, the burden of production shifts to the defendant to show some legitimate, nondiscriminatory reason for its actions. Once the defendant clearly sets forth these reasons through admissible evidence, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the offered reasons are pretextual and not the true reasons for the defendant's actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

This method of allocating burdens of production between the parties sharpens the inquiry into the elusive factual question of intentional discrimination. *Id.* at 255 n. 8, 101 S.Ct. at 1094 n. 8. However, at all times, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff. *Id.* at 253, 101 S.Ct. at 1093–94. Although this test was formulated in a Title VII case, courts have generally applied it also to cases involving age discrimination. *See Huhn v. Koehring Co.*, 718 F.2d 239, 243 (7th Cir.1983).

As a general principle, a plaintiff may establish a *prima facie* case of discrimination by showing (i) that she belongs to a protected minority; (ii) that she applied for and was qualified for a job for which the employer was seeking applicants; (iii) that despite her qualifications she was rejected; and (iv) that, after her rejection, the employer continued to seek applicants from persons of her qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 357–58, 97 S.Ct. 1843, 1865–66, 52 L.Ed.2d 396 (1977). The burden of establishing a *prima facie* case is not onerous. A plaintiff must show that she applied for a position for which she was qualified, but "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

█ Robinson has shown that she is a member of two protected classes; that she applied for a job for which she was, at least, minimally qualified; that she was rejected for the job despite those qualifications; and that, after her rejection, the employer continued to seek to fill the position. Thus, Robinson has established a *prima facie* case of racial discrimination.

█ However, defendant has also met his burden of producing admissible evidence that Robinson was rejected for a legitimate, nondiscriminatory reason. Robinson's poor interview, her lack of experience with the SAMMS system, and the significant amount of time since she had worked in inventory management are legitimate reasons for not offering her the job. Thus, defendant has rebutted the presumption raised by the *prima facie* case. Con-

**1414**

sequently, Robinson must bear the ultimate burden of persuading the Court that these reasons are pretextual and that, in actuality, she was the victim of intentional discrimination. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95.

 Robinson fails to carry this burden of persuasion. She argues that she is better qualified than three of the successful applicants, Harrison, Sanders, Osborne. However, unlike Sanders and Osborne, Robinson was not working in inventory management. In fact, Robinson had not worked in inventory management in close to ten years. Similarly, unlike Harrison, Robinson had no familiarity with the SAMMS system. Both Robinson and Harrison had not worked in inventory management for some time, but Harrison had greater experience with the relevant computer system. Thus, Harrison fit the job description better than Robinson.

Robinson's evidence of her experience with MUMMS is unpersuasive. At best, she has shown that Bennett performed his job in a perfunctory manner and did not make an extensive inquiry into the relevancy of her experience at the Marine Corps. Conversely, however, Robinson did not take advantage of her opportunity to present that experience. Given an opportunity to express her qualifications in an interview, Robinson failed to effectively showcase the applicability of her skills to the requirements of the job. Instead, Robinson declined to elaborate on her application when asked to do so.

Robinson cannot rely on Bennett's ignorance of her MUMMS experience when she failed to inquire into Bennett's knowledge of MUMMS. Similarly, she knew that the job description referred to SAMMS yet refused to explain how her lack of SAMMS experience did not disqualify her for this position. Robinson cannot establish intentional discrimination when she failed to inform Bennett of the pertinency of her background during the interview and failed to inquire as to his understanding of that background.

### III

Accordingly, the Court finds that Robinson has failed to establish a violation of either Title VII or the Age Discrimination in Employment Act. Thus, the Court finds in favor of defendant. An appropriate Order shall issue.